IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

EDWARD BRASLEY,                          )
                                         )     Case No.  CV-08-173-S-BLW
          Plaintiff,                     )
                                         )     **MEMORANDUM DECISION**
     v.                                  )     **AND ORDER**
                                         )
FEARLESS FARRIS SERVICE                  )
STATIONS, INC., et al.,                  )
                                         )
          Defendants.                    )
_____)

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment Against Plaintiffs Newell and Elliott (Docket No. 29), Plaintiffs' Motion for Complete or Partial Summary Judgment (Docket No. 35), and Defendants' Motion for Summary Judgment Against Plaintiffs Brasley, Ryan and Wayment (Docket No. 39).  The Court heard oral argument on the motions on February 2, 2009, and now issues the following decision.

## BACKGROUND

Prior to November 18, 2002, Fearless Farris Service Stations, Inc.

**Memorandum Decision and Order - 1**

("Fearless") was owned by Farris S. Lind, Kent Lind and H. Kent Johnson

("Lind/Johnson").  Sometime in the 1980s, Fearless established a retirement plan,

referred to as the Fearless Farris Service Stations, Inc. Deferred Compensation

Plan ("Plan").  According to the parties, the only documents evidencing the Plan

were certain letters and memoranda distributed to Plan participants over the years,

or in some cases placed in company files.  Apparently, Fearless did not consult any

legal advisors in establishing or maintaining the Plan.

      According to the letters and memoranda, the Plan underwent several changes

over the years.  On December 19, 1995, the company indicated that the company

was continuing to invest money to assist the participants in their retirement.  It

went on to state that the Plan would pay to the qualified employee or his surviving

beneficiary, upon reaching the retirement age of 65 and having completed a

minimum of 20 years of service to the company, a monthly sum of 25% of the

average of his/her last 5 years of service for a period of 15 years. In the case of an

employee pre-deceasing the retirement age of 65 years, but still meeting the years

of service requirement, the Company would pay to the surviving beneficiary 50%

of the employee's last 5-year average income, paid monthly for 15 years.  Also, at

various times, Fearless purchased and maintained life insurance policies on each of

the Plan participants.

**Memorandum Decision and Order - 2**

On August 22, 2002, Lind/Johnson sold the Fearless operations through a Stock and Asset Purchase Agreement with Charshaw, Inc., Davis-Jones, Inc. and Joshnik LLC ("Jones/Davis").  The deal was finalized on November 18, 2002. The change in ownership led to substantial changes in the Plan.    The Purchase Agreement provided for retention of the insurance policies on the lives of Lind/Johnson by Lind/Johnson, and the other life insurance policies remained among the assets of Fearless.  Prior to the sale, the insurance policies had been pledged as collateral to a bank, but after the sale, Jones/Davis paid off the loan and the life insurance policies were released free and clear.  Subsequent to the sale, Jones/Davis surrendered the insurance policies for their combined cash value in excess of $600,000.  The funds were placed in the corporate accounts of Fearless.

In July 2003, Jones/Davis held meetings with Plan participants, and distributed a memorandum informing the Plan participants that the Plan was terminated.  Fearless also informed the Plan participants that Fearless had no financial obligation to Plan participants as a result of the Plan termination.

In an earlier, related case, one of the Plan participants, Ted Roberts, sued Lind/Johnson, Jones/Davis and Fearless in this Court.  The case – *Roberts v. Fearless Farris Service Stations, Inc.*, CV-05-472-S-WFN ("*Roberts*"). – was handled by Judge William F. Nielson from the Eastern District of Washington,

**Memorandum Decision and Order - 3**

sitting by designation.  In that case, the Court concluded that Fearless,

Lind/Johnson and Jones/Davis were all fiduciaries under the Plan.  However, the

Court determined that although Lind/Johnson breached their fiduciary duties by

failing to follow ERISA requirements in creation and maintenance of the Plan, no

damages arose from that failure.  Therefore, they were not held liable for any

damages resulting from their breach of their fiduciary duties.

However, the Court also determined that Jones/Davis and Fearless breached

their fiduciary duties by failing to follow ERISA requirements in maintenance and

termination of the Plan, and that their violations deprived Roberts of his vested

rights in the Plan.  Accordingly, the Court found that Fearless and Jones/Davis

were liable to Roberts for his vested benefits under the Plan, and the Court ordered

Fearless and Jones/Davis to create and fund an annuity which guarantees Roberts'

benefits under the Plan.  Specifically, the Court ordered that the annuity shall

provide Roberts with $988.40 per month for fifteen years upon reaching age 65, or

$1,976.79 per month to the surviving beneficiary if Roberts predeceases the

retirement age of 65.

Plaintiffs subsequently brought this action.  In an earlier Memorandum

Decision and Order, this Court determined that Judge Nielsen's findings of fact

and conclusions of law in *Roberts* have a preclusive effect in this matter to the

**Memorandum Decision and Order - 4**

extent Judge Nielsen made determinations generally applicable to the Plan.  It does
not, however, have a preclusive effect on Defendants' right to assert certain
defenses, including, but not limited to, statute of limitations, waiver, laches, etc.
The Court now has before it cross-motions for summary judgment dealing
primarily with these defenses.

## ANALYSIS

## I.      Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and
dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S.
317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the
"principal tool[ ] by which factually insufficient claims or defenses [can] be
isolated and prevented from going to trial with the attendant unwarranted
consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of
some alleged factual dispute between the parties will not defeat an otherwise
properly supported motion for summary judgment; the requirement is that there be
no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,
247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving
party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct

**Memorandum Decision and Order - 5**

testimony of the non-movant must be believed, however implausible.  *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence.  *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc).  To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case.  *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

## II.     Defendants' Motion for Summary Judgment against Newell and Elliott

On July 22, 2003 Betty Newell and Fearless entered into an employment separation agreement, which included a release and waiver.  (Jones Aff., Ex. A.) According to the agreement, Fearless paid Newell $30,000.00 in consideration.  In

return, Newell executed a release and waiver, which provided, in relevant part, as

follows:

> [Newell] knowingly, willfully, irrevocably and
> unconditionally release, acquit and forever discharge and
> release Fearless . . . , its predecessors and successors,
> owners, and all other persons acting by or through
> Fearless . . . from any claims for additional
> compensation, severance or benefits in any form or
> damages, or for personal injuries or attorneys' fees . . .
> specifically includ[ing] . . . all claims for relief or remedy
> under . . . labor and employment laws including, but not
> limited to, the Employee Retirement Income Security Act
> (ERISA).

(Jones Aff., Ex. A.)

In January 2005, Vernon Elliott also signed a Settlement and Release

Agreement to resolve a lawsuit against Fearless.  (Jones Aff., Ex. D.)  As a part of

the agreement, Fearless paid Elliott $3,000.00.  In exchange, Elliott executed a

release and waiver, which provided in relevant part that "Elliott knowingly and

voluntarily releases, discharges and waives all causes of action or claims he may

have or have had against Fearless . . . including without limitation any claim under

. . . The Employee Retirement Income Security Act, 29 U.S.C. § 1101, et seq."

(Jones Aff., Ex. D.)

Subsequently, on September 8, 2008, Plaintiffs filed their First Amended

Class Action Complaint in this case alleging ERISA violations and adding Betty

**Memorandum Decision and Order - 7**

Newell and Vernon Elliott as plaintiffs to the lawsuit. Defendants contend that the above agreements preclude the claims asserted by Newell and Elliott. Plaintiffs counter that the agreements are unenforceable pursuant to 29 U.S.C. § 1110(a), also found at 1 ERISA § 410(a).

Neither the parties nor the Court could locate a Supreme Court or Ninth Circuit case specifically addressing this issue.[1] However, in *Leavitt v. Northwestern Bell Telephone Co.*, 921 F.2d 160, 161 (8th cir. 1990), the Eighth Circuit Court directly addressed the question of whether Section 1110(a) applies to void agreements like those mentioned above. In *Leavitt*, the plaintiff signed a release with his former employer, Bell Telephone, in exchange for $15,000, which was less than he would have received under his ERISA-covered plan. *Leavitt*, 921 F.2d at 161. Bell Telephone argued that the release discharged the company from any liability. The district court granted summary judgment in favor of Bell Telephone, and the plaintiff appealed.

On appeal, the Eighth Circuit considered whether Section 1110(a) bars private releases of statutory claims. The applicable language in Section 1110(a) states that "any provision in an agreement or instrument which purports to relieve a

---

[1] The Ninth Circuit has determined that a statement in the Plan itself establishing that certain officers are not acting as fiduciaries is void as against public policy. *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1460 (9th Cir. 1995). However, the court did not address separate release agreements like those before the Court in this case.

**Memorandum Decision and Order - 8**

fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections of ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). The Eighth Circuit concluded that "a release is not an 'agreement or instrument' within the meaning of section 1110(a)." *Leavitt*, 921 F.2d at 161. The court explained that Section 1110(a) prohibits agreements which diminish the statutory obligations of a fiduciary, but a release "does not relieve a fiduciary of any responsibility, obligation, or duty imposed by ERISA" *Id*. at 161-62. Rather, a release simply settles a dispute "that a fiduciary did not fulfill its responsibility or duty on a given occasion." *Id*. at 162. Notably, the Eighth Circuit explained that to hold otherwise would amount to required, protracted litigation whenever there is a claim for breach of fiduciary duty under ERISA. *Id*. Moreover, the Eighth Circuit explained that settlement of a breach of fiduciary duty claim under ERISA need not be supervised by courts, given the general knowledge base of most employees covered by ERISA.

However, the *Leavitt* court also explained that even if Section 1110(a) does not bar private releases of statutory claims, the court must determine whether a release is enforceable. *Id*. at 161. "A fiduciary and a beneficiary can settle a disputed claim that the fiduciary breached its fiduciary responsibilities under ERISA if the claim is knowingly and voluntarily released." *Id*. at 162. General

**Memorandum Decision and Order - 9**

principles of contract construction are used to determine whether a release is

knowing and voluntary. *Id.* Nevertheless, because principles of trust law guide the

decision, the court "must examine the totality of the circumstances in which the

release was signed to ensure the fiduciary did not obtain the release in violation of

its duties to the beneficiary." *Id.* In applying these principles, the court should

consider the following:

> (1) [the beneficiary's] education and business experience;
> (2) [the beneficiary's] input in negotiating the terms of
> the settlement; (3) the clarity of the release language; (4)
> the amount of time [the beneficiary] had for deliberation
> before signing the release; (5) whether [the beneficiary]
> read the release and considered its terms before signing
> it; (6) whether [the beneficiary] knew of his rights under
> the plan and the relevant facts when he signed the
> release; (7) whether [the beneficiary] was given an
> opportunity to consult with an attorney before signing the
> release; (8) whether [the beneficiary] received adequate
> consideration for the release; and (9) whether [the
> beneficiary's] release was induced by improper conduct
> on [the fiduciary's] part.

*Id.*

The principles discussed in *Leavitt,* when applied to the facts here, presents a

mixed bag. On the one hand, each release clearly states that the beneficiary

releases and waives all causes of action against Fearless, including ERISA claims.

(Jones Aff., Exs. A & D.) Moreover, each beneficiary had 21 days to consider the

release and 7 days to revoke acceptance of it. (Id.) Newell and Elliott each signed

**Memorandum Decision and Order - 10**

their respective releases, which suggests that they also read them.  In fact, the

Elliott release concludes with a line indicating that the undersigned has read and

understands the release.  (Jones Aff., Ex. D.)  Finally, Elliott was represented by

his attorney, Mr. Huntley, and Newell was encouraged to consult with an attorney.

(Jones Aff., Ex. A).

On the other hand, several of the *Leavitt* factors suggest that the releases

were obtained in violation of Fearless's fiduciary duty.   For example, Newell's

and Elliott's education and business experience are unclear, as is their input in

negotiating the terms of their releases.

In addition, serious questions remain as to whether Newell or Elliott knew of

their rights under the plan when they signed the releases, and whether the releases

were induced by improper conduct on the part of Fearless.  ERISA requires that

fiduciaries furnish participants and beneficiaries with summary plan descriptions

"in a manner calculated to be understood by the average plan participant . . .

sufficiently accurate and comprehensive to reasonable apprise such participants

and beneficiaries of their rights and obligations under the plan."  29 U.S.C.

§ 1022(a); see also 29 U.S.C. §§ 1021 and 1024.

Taking the facts in the light most favorable to Plaintiffs, the record reveals

that Fearless did not provide the summary plan descriptions to any plan

**Memorandum Decision and Order - 11**

participants subsequent to November 2002, and it is unclear from the record whether they provided any summary plan descriptions before that.  (Huntley Aff., Ex. A, Jones Depo. P. 57:1-5.)  The release would appear to be unenforceable if Newell and Elliott released claims which they did not know they possessed because Fearless did not provide them with summary descriptions accurately detailing their rights under the Plan.

Questions of fact also remain as to whether the releases were obtained as the result of misrepresentations about Newell's and Elliott's legal rights.  Specifically, there is a disputed issue of fact as to whether Fearless improperly induced Newell and/or Elliott to sign the releases by suggesting that the ERISA plan had been legally terminated, and that Fearless had no financial obligation to them.  (Fourth Huntley Aff., Ex. 8.)

Finally, questions of fact exist as to whether Newell and Elliott received adequate consideration for the releases.   The record indicates that their potential benefits under the Plan significantly outweighed the compensation they received in exchange for the releases.

Under these circumstances, the Court finds that genuine issues of material fact remain as to whether Fearless obtained the releases in violation of its duties to the beneficiaries.  *Leavitt*, 921 F.2d at 162.  Accordingly, the Court will deny

**Memorandum Decision and Order - 12**

Defendants' motion for summary judgment against Newell and Elliott.

## III.    Defendants' Motion for Summary Judgment against Brasley, Wayment and Ryan

Defendants contend that they are entitled to summary judgment against

Brasley, Wayment and Ryan because Plaintiffs' claims are barred by the statute of

limitations and/or the doctrine of laches.

### A.    Statute of Limitations

Defendants contend that each of Brasley's, Wayment's and Ryan's claims

are barred by the statute of limitations.  The Court will address the applicable

statute of limitations as they apply to each of the claims.

#### 1.    Breach of Fiduciary Duty and Equitable Relief Claims (Counts 2 and 3)

Defendants contend that the breach of fiduciary duty claims are barred by

the applicable statute of limitations, which states as follows:

> No action may be commenced under this subchapter with
> respect to a fiduciary's breach of any responsibility, duty,
> or obligation under this part, or with respect to a violation
> of this part, after the earlier of –
>
> (1) six years after (A) the date of the last action which
> constituted a part of the breach or violation, or (B) in the
> case of an omission the latest date on which the fiduciary
> could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the
> plaintiff had actual knowledge of the breach or violation;

> except that in the case of fraud or concealment, such
> action may be commenced not later than six years after
> the date of discovery of such breach or violation.

29 U.S.C. § 1113.

Typically, the Court must conduct the following two-part inquiry when applying the ERISA statute of limitations: (1) determine when the alleged violations occurred and (2) determine when plaintiff had actual knowledge of the violation. *Ziegler v. Connecticut Gen. Life Ins., Co.*, 916 F.2d 548, 550 (9th Cir.1990). It is "unnecessary to await an actual injury or harm before the ERISA action . . . [becomes] actionable." *Id.* The three-year statute of limitations is triggered upon "knowledge of the transaction that constituted the alleged violation, not by . . . knowledge of the law." *Blanton v. Anzalone*, 760 F.2d 989, 992 (9th Cir.1985).

However, as plainly expressed in the statute, the 3-year limitation period may be tolled, triggering a six-year statute of limitations, through fraud or concealment by the fiduciary. *Barker v. American Mobil Power Corp.*, 64 F.3d 1397, 1402 (9th Cir. 1995). This exception to the general rule applies when the fiduciary has taken steps to hide its breach. *Id.*

Here, as discussed above with respect to the Newell/Elliott motion, taking the facts in the light most favorable to Plaintiffs, questions of fact remain as to

**Memorandum Decision and Order - 14**

whether Fearless failed to provide Plaintiffs with summary plan descriptions "in a manner calculated to be understood by the average plan participant . . . sufficiently accurate and comprehensive to reasonable apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a); see also 29 U.S.C. §§ 1021 and 1024.  Likewise, serious questions of fact remain as to whether Fearless concealed its fiduciary duties by informing Plaintiffs that "the company has no financial obligation to you as a result of the termination" of the Plan.  (Fourth Huntley Aff., Ex. 8).

Additionally, the decision in the *Roberts* case may be significant here.  As stated in this Court's earlier Memorandum Decision and Order, the *Roberts* case has a preclusive effect on this case to the extent Judge Nielsen made determinations generally applicable to the Plan.  In his opinion, Judge Nielsen specifically determined that Fearless "breached their fiduciary duties by failing to follow ERISA requirements in maintenance and termination of the Plan . . . [which] deprived Plaintiff of his vested rights in the Plan."  (Huntley Aff., Ex. A, *Roberts v. Fearless Farris Service Stations, et. al.*, CIV-05-472-S-WFN, p. 8). Although Judge Nielsen does not specify in what manner Fearless failed to follow ERISA requirements in maintenance and termination of the Plan, his conclusion does raise questions about whether Fearless took steps to hide a breach of its

**Memorandum Decision and Order - 15**

fiduciary duty.  *Barker*, 64 F.3d at 1402.

The Court therefore concludes that genuine issues of material fact remain as to whether Fearless concealed its fiduciary responsibilities, which in turn creates a genuine issue of material fact as to whether the three-year or six-year statute of limitations applies.  These factual disputes affect the outcome of the fiduciary duty claims.  With respect to Brasley and Wayment, the breaches were discovered on July 22, 2003 when Fearless informed Brasley and Wayment that it was terminating the Plan as of that day.  Fearless provided them with written notice of the termination at that point, indicating that the Plan was not funded.  Brasley then commenced this lawsuit on April 17, 2008, and Wayment joined on September 8, 2008, well within the six-year limitations period.  Thus, if the six-year statute of limitations applies, Plaintiffs' claims are timely.

With respect to Ryan, Defendants suggest that she knew or should have discovered the alleged breach when her husband passed away in 1997.  However, the record before the Court indicates that Ryan received no notice from Defendants that she had a claim when her husband passed away.  Moreover, considering her relative lack of education, and the failure by Fearless to provide summary plan descriptions to her or her husband, she had no reason to know that she had benefits.  Thus, in all likelihood, Ryan did not discover the breach until just prior to

**Memorandum Decision and Order - 16**

commencement of this lawsuit.  At the very least, there exists a genuine issue of

material fact as to when Ryan discovered the breach.  Accordingly, Defendants'

motion for summary judgment on the breach of fiduciary duty claim will be denied

as to all three Plaintiffs.

In turn, Defendants' motion related to Plaintiffs' cause of action for

equitable relief (Count 3) under 29 U.S.C. 5 1132(a)(3) will also be denied.  "To

establish an action for equitable relief under ERISA section 502(a)(3), 29 U.S.C.

1132(a)(3), the defendant must be an ERISA fiduciary acting in a fiduciary

capacity, and must violate . . . ERISA-imposed fiduciary obligations." *Mathews v.

Chevron Corp.*, 362 F.3d 1172, 1178 (9th Cir. 2004) (Internal citations omitted).

Thus, to establish a right to equitable relief under 29 U.S.C. 5 1132(a)(3), there

must be a breach of fiduciary duty.  Therefore, the Court must apply the same

statute of limitations to the equitable relief claim as it applies to the fiduciary duty

claim because a claim under 29 U.S.C. 5 1132(a)(3) is premised upon a breach of

fiduciary duty.  For the reasons explained above, genuine issues of material fact

remain as to Plaintiffs' breach of fiduciary claims under ERISA § 413(2).

Accordingly, genuine issues of material fact also remain as to Plaintiffs' equitable

relief claims.[2]

## 2.      Benefits Claims (Count 1)

Defendants also contend that Plaintiffs' claims for benefits are barred by the statute of limitations.  In Count 1, Plaintiffs assert a claim for benefits under ERISA 5 502(a)(l)(B), also found at 29 U.S.C. § 1132(a)(1)(B).  Plaintiffs essentially seek funding of the Plan through the purchase of annuities or insurance sufficient to pay them the promised benefits upon reaching age 65, and/or provide for payment of the promised benefits to each beneficiary should a participant die before reaching age 65.  Under Section 1132(a)(1)(B), a participant of a covered plan may bring a civil action to recover benefits due the participant under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify rights to future benefits under the terms of the plan.  29 U.S.C. § 1132(a)(1)(B).

Here, Brasley and Wayment have not reached the point where they are currently entitled to benefits under the plan (they have not died or reached the age of 65).  Hence, with respect to them, Count 1 appears to involve a claim to clarify their rights to future benefits under the terms of the Plan.  29 U.S.C. § 1132(a)(1)(B).

---

[2] Section 1132(a)(3) is a catchall provision, however, and equitable relief under this provision is not appropriate when Section 1132(a)(1) provides an adequate remedy.  *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1475 (9th Cir. 1997).  Thus, in the end, relief under this section may ultimately be denied in any event.

**Memorandum Decision and Order - 18**

Defendants contend that the benefits claims are simply veiled claims for equitable relief, and that the three-year statute of limitations therefore applies. However, as discussed above, the six-year statute of limitations applies to equitable claims in this case.  Thus, even if the benefits claims are veiled claims for equitable relief, they are not barred by the statute of limitations.

Moreover, under the more likely conclusion that the benefits claims are considered breach of contract claims, this Court should apply the most analogous state statute of limitations to determine the length of the limitations period.  *Chuck v. Hewlett Packard Co.*, 455 F.3d 1026, 1031 (9th Cir. 2006).  As the parties agree, Idaho's 5-year statute of limitations for breach of written contracts is the most analogous in this case.  Idaho Code § 5-216.  Using the July 22, 2003 date as the breach of contract date, Brasley's complaint, filed on April 17, 2008 falls within the 5-year statute of limitations.  In turn, because Brasley included a request for class certification or representative capacity in his original complaint, all class members or participants and beneficiaries of the plan, presumably including Wayment, will be deemd to have filed on that date.  Thus, at the very least, summary judgment is premature as to Wayment until the Court addresses class certification and/or representative capacity as explained below in connection with Plaintiffs' motion for summary judgment.

**Memorandum Decision and Order - 19**

Unlike Brasley and Wayment, Plaintiff Ryan's claim for benefits is more accurately considered an action to recover benefits due the participant under the terms of the Plan or to enforce her rights under the terms of the Plan. 29 U.S.C. § 1132(a)(1). As explained above, Idaho's 5-year statute of limitations therefore applies. *Chuck,* 455 F.3d at 1031. However, federal law governs when a cause of action accrues and thereby triggers the start of the limitations period. *Id.* ERISA causes of action accrue "either at the time benefits are actually denied or when the insured has reason to know that the claim has been denied." *Id.* (Internal quotation and citation omitted.) Thus, "a cause of action accrues when a pension plan communicates a clear and continuing repudiation of a claimant's rights under a plan, such that the claimant could not have reasonably believed but that his benefits had been finally denied." *Id.* (Internal quotations and citation omitted.)

In this case, it is unclear when Ryan's claim accrued, but it is clear that it was not at the time of her husband's death as argued by Defendants. As discussed earlier in this Memorandum Decision, Defendants' lack of compliance with ERISA notices and other fiduciary duties prevented Ryan from understanding her potential benefits at the time of her husband's death. Ryan received no notice from the Defendants that she had a claim, and she therefore made no benefits claim at that point. It appears that Ryan first learned of her potential benefits just prior to the

**Memorandum Decision and Order - 20**

filing of this lawsuit.  At the very least, the Court finds that a genuine issue of material fact remains as to when Ryan's benefits claims accrued.

Moreover, as with Wayment, because Brasley included a request for class certification or representative capacity in his original complaint, all class members or participants and beneficiaries of the plan, presumably including Ryan, will be deemed to have filed on that date.  Thus, summary judgment is premature until the Court addresses class certification and/or representative capacity as explained below. Accordingly, the Court will deny Defendants' motion as it relates to the benefits claims.

### 3.    Failure to Provide Information Claims (Count 4)

Plaintiffs bring their fourth cause of action pursuant to ERISA § 502(a)(l)(A), which provides that a civil action may be brought for the relief provided for in subsection (c) of the same section.  29 U.S.C. § 1132(c).  In relevant part, it states as follows:

> An administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) . . . may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal.

29 U.S.C. § 1132(c)(1).

Defendants contend that, as with Plaintiffs' claims for benefits, the Court must select a limitations period from a state statute governing analogous causes of action.  Defendants then suggest that the statutory award under Section 1132(c) is punitive in nature, and that, like the Northern District of California has determined, this Court should find that the state statute of limitations for actions upon a statute for a penalty or forfeiture is most analogous.  *Glavor v. Shearson Lehman Hutton, Inc.*, 879 F.Supp. 1028, 1034-1035 (N.D.Cal. 1994).  Under that argument, Idaho Code § 5-219, which contains language similar to the California Code utilized in *Galvor*, provides that a 2-year statute of limitations governs.

However, even if the Court does, in fact, apply a 2-year statute of limitations, Plaintiffs timely filed their Section 1132(c) claims.  Plaintiffs' allegations are based on assertions that they initially made a request for information pursuant to Section 1132(c) on October 26, 2007.  (Amended Complaint, ¶ 44.)  Thus, even under a 2-year statute of limitations, Plaintiffs' claims are timely.

### B.    Doctrine of Laches

Defendants contend that all of Ryan's claims, and Count 4 of Brasley's and Wayment's claims, are barred by the doctrine of laches.  Laches is an equitable

**Memorandum Decision and Order - 22**

defense.  *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950 (9th Cir. 2001).  "To demonstrate laches, the defendant must prove both an unreasonable delay by the plaintiff and prejudice to itself."  *Id.* at 951 (Internal citation and quotation omitted.)

With respect to Ryan, Defendants assert that she could have brought her claims as early as 1997 when her husband died.  However, as explained above, there is at least a genuine issue of material fact regarding whether Defendants concealed information, or otherwise prevented Ryan from knowing she had a potential claim at the time of her husband's death.  Accordingly, Defendants have failed to show an unreasonable delay on the part of Ryan.

Defendants likewise fail to show that Brasley and Wayment unreasonably delayed bringing their Count 4 claims.  Defendants mistakenly focus on Plaintiffs' delay in requesting information which the administrator is required to furnish to participants.  However, Plaintiffs' claim is that Defendants failed or refused to comply with their request when it was made in October 2007.  29 U.S.C. § 1132(c)(1).  It makes no difference that Plaintiffs waited until October 2007 to make the request.  Plaintiffs followed their initial request with another request later that year, and then filed their lawsuit within months.  Under these circumstances, Plaintiffs' claims were not unreasonably delayed.

**Memorandum Decision and Order - 23**

**IV.   Plaintiffs' Motion for Summary Judgment**

Plaintiffs seek several rulings from the Court in their motion for summary judgment.  First and foremost, however, Plaintiffs seek an order stating that the named plaintiffs, or any one of them, may proceed on behalf of the Plan to recover losses to the Plan and obtain other equitable and remedial relief.  Plaintiffs then ask for a number of rulings regarding the Plan and individual Plaintiffs.

Plaintiffs' Amended Complaint is framed as a class action complaint, or alternatively, on behalf of the Plan.  Plaintiffs never moved for class certification. Instead, Plaintiffs now focus on bringing their claims on behalf of the Plan. Section 1132(a)(2) expressly authorizes plan participants and/or beneficiaries to bring a civil action for violations of Section 1109(a).  *Simon v. Hartford Life, Inc., 546 F.3d 661, 664 (9th Cir. 2008)*.  And, in fact, "beneficiaries, participants, and fiduciaries of an ERISA plan ordinarily may bring an action for breach of fiduciary duty only on behalf of an ERISA covered plan and not in their individual capacities." *Landwehr v. DuPree, 72 F.3d 726, 732 (9th Cir. 1995)*.  Moreover, although it does not appear the Ninth Circuit has addressed the requirements which must be met before a plaintiff sues on behalf of the Plan, the Second Circuit recently addressed the issue head on in *Coan v. Kaufman, 457 F.3d 250 (2nd Cir. 2006)*.

**Memorandum Decision and Order - 24**

In *Coan*, the Second Circuit expressed doubt that Rule 23 or principles of derivative actions apply in such cases, but it did voice concern with how an action can be brought in a representative capacity on behalf of a plan "if the plaintiff does not take any steps to become a bona fide representative of other interested parties." *Coan*, 457 f.3d at 257.  A representative must employ procedures to protect effectively the interests of the plan they purport to represent.  *Id.*  The court went on to note that ERISA does not, however, specify the procedures that a plan participant must follow in order to bring suit on behalf of a benefit plan.  *Id.*  After extensive review of draft bills of ERISA legislation, the court determined that Congress determined to "leave the procedures necessary to protect absent parties, and to prevent redundant suits, to be worked out by parties and judges according to the circumstances on a case by case basis."  *Id.* at 260.

Ultimately, the Second Circuit found it unnecessary and unhelpful to delineate minimum procedural safeguards that Section 1132(a)(2) requires in all cases.  *Id.* at 261.  The Court did, however, suggest that "although plan participants need not always comply with Rule 23 to act as a representative of other plan participants or beneficiaries, those who do will likely be proceeding in a 'representative capacity' properly for purposes of section 502(a)(2)."  *Id.* "Ultimately, however, the requirement is only that the plaintiff take adequate steps

under the circumstances properly to act in a representative capacity on behalf of the plan." *Id*. (Internal quotation and citation omitted).

At this point in this case, the Court has determined that the best process for going forward is to require Plaintiffs to provide the Court with a recommendation for the steps they feel are necessary and adequate to act in a representative capacity.  The Court recognizes that Plaintiffs have apparently made some attempts to contact potential participants in order to advise them about this case, but the Court feels that a more concrete approach is necessary.  Once Plaintiffs provide the Court with a proposal, Defendants may then file a response brief expressing any concerns they have with the proposal.  The Court will then issue an order outlining the final requirements.  Alternatively, the Court encourages counsel to work together on a proposal.

With respect to the remainder of Plaintiffs' requests in their motion for summary judgment, the Court finds that it is premature to rule on them until the representative capacity issue is resolved.  Accordingly, the Court will deny the motion without prejudice.  If necessary, the Court may entertain a renewed motion once the representative capacity issue is resolved.

## V.     Attorneys' Fees and Costs

With respect to the parties' request for attorney fees related to these motions,

the Court notes that pursuant to 29 U.S.C. § 1132(g)(1), "the court in its discretion may allow a reasonable attorneys' fee and cost of action to either party."  Given the complexities in the law, coupled with the lack of Ninth Circuit case law in some of the relevant areas at issue here, the Court finds that neither party addressed these motions for summary judgment in a frivolous or vexatious manner.  Accordingly, the Court will not grant either party its attorneys' fees and costs.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment Against Plaintiffs Newell and Elliott (Docket No. 29) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Complete or Partial Summary Judgment (Docket No. 35) shall be, and the same is hereby, DENIED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment Against Plaintiffs Brasley, Ryan and Wayment (Docket No. 39) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiffs shall file a proposed plan for fulfilling the representative capacity requirements on or before **March 27, 2009**. Defendants may file their response brief on or before **April 10, 2009**.

**Memorandum Decision and Order - 27**

Alternatively, the parties may file a joint proposal on or before **March 27, 2009**.



DATED:  **March 9, 2009**

Honorable B. Lynn Winmill
Chief U. S. District Judge