UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD BRASLEY, *et al.*,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>FEARLESS FARRIS SERVICE STATIONS, INC., *et al.*,<br><br>　　　　　　Defendants. | Case No. 1:08-CV-173-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Plaintiffs' Motion for Award of Attorney Fees (Dkt. 156) and Defendants' Motion for Attorney Fees and Costs (Dkt. 157).

## LEGAL STANDARD

The Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party" in an ERISA action. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120 (9th Cir. 2010); see also 29 U.S.C. § 1132(g)(1). The party claiming fees and costs need not be the prevailing party, but must show some degree of

success on the merits. *Id*. (*citing Hardt v. Reliance Standard Life Ins. Co.*, 130 S.Ct. 2149, 2156-59 (2010). A "claimant can satisfy that requirement if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue." *Id*. at 1120-21 (*citing Hardt*, 130 S.Ct. at 2156-59).

Once a party establishes "some degree of success on the merits," the Court may exercise its discretion to grant fees and costs under § 1132(g)(1). *Id*. In the Ninth Circuit, a district court exercising its discretionary must consider five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir.1980). The factors are: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions." *Id*.

## ANALYSIS

1. **Plaintiffs' Motion for Attorney's Fees**

The Court will grant Plaintiff's request for a fee award. There is no question Plaintiffs attained some degree of success on the merits in this case. After issuing its Findings of Fact and Conclusions of Law, the Court entered a final judgment in favor of

all but two plaintiffs on Counts One, Two and Three. Only plaintiff Elliott's claims and Plaintiffs' request for statutory penalties under Count Four were denied.

The Court ordered Defendants to comply with ERISA and create and fund a plan, qualified and consistent with the requirements of ERISA for Plan participants currently employed by Stinker Stores, Inc. The Court also ordered Defendants to purchase and provide to each plaintiff no longer employed by Stinker Stores, Inc. an annuity guaranteeing payment of monthly retirement benefits to each individual under the terms of the Plan. Accordingly, Plaintiffs attained at least some degree of success on the merits. The Court will therefore address the five *Hummell* factors.

A. *Culpability or Bad Faith*

As explained in the Court's Findings of Fact and Conclusions of Law, sometime in the 1980s, Fearless Farris Service Stations, Inc. ("Fearless") established a retirement plan, referred to as the Fearless Farris Service Stations, Inc. Deferred Compensation Plan (the "Plan"). In 2002, certain purchasing entities formed by Defendants Charley Jones and Shawn Davis purchased the common stock and assets of Fearless Farris Service Stations, Inc., Fearless Farris Wholesale, Inc., and their various subsidiary entities. As a result of the purchase agreement, Jones/Davis became the sole shareholders and owners of Fearless and its subsidiaries, which are all now part of Stinker Stores, Inc. ("Stinker").

Soon after they acquired Fearless and its subsidiaries, Defendants sought to terminate the Plan. Defendants provided the Plan participants with a memorandum

stating that the "Plan is terminated effective 7/22/03." *Joint Trial Ex.* 6. It also stated that "[t]he company has no financial obligation to you as a result of the plan termination." *Id*.

In an earlier, related case, one of the Plan participants, Ted Roberts, sued Defendants for terminating the Plan. The case was handled by Judge William F. Nielson from the Eastern District of Washington, sitting by designation. As explained in more detail in the Court's Findings of Fact and Conclusions of Law, Judge Nielsen concluded that the Plan was subject to ERISA, and that Defendants breached their fiduciary duties to follow ERISA requirements for the Plan. Judge Nielsen required Defendants to make arrangements to pay Roberts his benefits under the Plan.

Even with that judgment in hand, Defendants forced Plaintiffs to bring this suit in order to obtain their benefits under the Plan. Only two months into this case, the Court determined that Judge Nielsen's findings of fact and conclusions of law in the *Roberts* case had a preclusive effect to the extent Judge Nielsen made determinations generally applicable to the Plan. Still, Defendants pressed on until this Court issued a final judgment requiring Defendants to fulfill their duties under the Plan.

The Court recognizes that at some point during this litigation, Defendants essentially conceded that they owed Plaintiffs an obligation under the Plan. However, the case still proceeded all the way to trial. This shows at least some degree of culpability or

bad faith on the part of Defendants.[1]

### B. *Ability to Satisfy a Fee Award*

Defendants concede that their ability to pay is greater than that of Plaintiffs. They suggest that any fee award will come from the general assets of Stinker which are not limitless. Still, there is no real dispute that Defendants have the ability to pay a fee award.

### C. *Whether Fee Award Would Deter Others*

Defendants contend that the unique circumstances of this case make this factor irrelevant. Defendants state that they have agreed to pay the benefits to former employees and provide an ERISA Plan for current employees. As explained above, the Court recognizes that at some point during this litigation Defendants conceded they would be required to pay benefits to Plaintiffs. However, that concession was not as voluntary as Defendants might suggest. As evidenced by the record, this matter went all the way to a bench trial where Defendants were ultimately ordered by the Court to pay Plaintiffs their benefits under the Plan. Under these circumstances, the Court finds that a fee award would deter other defendants in a similar situation from attempting to terminate a retirement plan.

---

[1] Defendants reference this Court's earlier order denying both parties' request for fees on cross-motions for summary judgment. Neither party extensively briefed the fee issue at that point, and the Court simply noted that neither party addressed the summary judgment motions in a frivolous or vexatious manner. The Court is now addressing the fee issue with a complete record and extensive briefs by the parties, which gives the Court a better opportunity to decide the fee issue on the merits.

### D.   *Whether Plaintiffs Sought to Benefit All Participants and Beneficiaries*

Defendants concede that Plaintiffs brought this action in part to benefit all participants.

### E.   *Relative Merits of the Parties' Positions*

The merits of the case are born out by the results.  Plaintiffs prevailed on the bulk of their claims, and Defendants were ordered to provide them with the benefits promised in the original Plan.  Defendants prevailed only as to plaintiff Elliott's claims – one of approximately thirty plaintiffs – and on the statutory penalties claim.  The merits of Plaintiffs' claims outweigh the merits of Defendants' claims.

### 2.   **Defendants' Motion for Attorney's Fees**

The Court will deny Defendants' request for a fee award.  Defendants contend that they are entitled to fees for successfully defending plaintiff Elliott's claims, successfully defending the statutory penalties claim, and for any work done after the mediation because they agreed to pay benefits under the Plan at that point.

As explained above, a party claiming fees and costs need not be the prevailing party, but must show some degree of success on the merits.  *Simonia*, 608 F.3d at 1120.  However, a trivial success or procedural victory does not satisfy this requirement.  *Id*. (*citing Hardt*, 130 S.Ct. at 2156-59).

Under the circumstances of this case, the Court concludes that successfully defending against plaintiff Elliott's claims was a trivial success.  He was only one of

approximately thirty plaintiffs, and his benefits would have been limited by his short time with the company. As for the request for any fees incurred post-mediation, the Court finds no merit in Defendants' argument. Although the Court recognizes that Defendants generally agreed they owed Plaintiffs benefits under the plan at that point, that concession was hollow until this Court entered its judgment.

With respect to the statutory penalties claim, the Court finds that Defendants did, in fact, obtain a degree of success on the merits. The statutory penalties claim could have been significant had Plaintiffs prevailed. However, the Court finds that the *Hummell* factors weigh against granting Defendants' request for a fee award.

First and foremost, the Court finds no culpability or bad faith on the part of Plaintiffs. As explained in detail in the Court's Findings of Fact and Conclusions of Law, Plaintiffs sought statutory penalties for Defendants' failure to provide Summary Plan Descriptions in conformance with the form and contents requirements of ERISA § 102, Summary Annual Reports under ERISA § 104(b)(3), and Participant Benefit Statements in accordance with ERISA § 105(a). The award of administrative penalties was within the discretion of the Court. 29 U.S.C. § 1132(c)(1).

In this case, Defendants did not dispute or offer evidence that Plaintiffs did not request the documents or that they provided the documents to Plaintiffs. Instead, Defendants suggested that the particular circumstances of this case supported the Court exercising its discretion against an award of penalties. The Court agreed. However, that

does not change the fact that the claim had some validity based on the facts. Therefore, Plaintiffs did not act in bad faith in bringing the claim for statutory penalties.

The remaining *Hummell* factors also weigh against a fee award. There is no indication that Plaintiffs have much, if any, ability to satisfy a fee award, and the Court would not want to deter others from acting as Plaintiffs did in this case. Moreover, for the most part, Defendants specifically fought to limit Plaintiffs claims to the named plaintiffs as opposed to all Plan participants. Finally, as explained above, Plaintiffs claims were more meritorious than Defendants. Accordingly, the Court will exercise its discretion not to grant Defendant's request for a fee award. However, as explained below, the Court will reduce Plaintiffs' fee award to account for these areas where Plaintiffs did not prevail.

3.  **Amount of Fees Defendants Must Pay Plaintiffs**

The Ninth Circuit follows the hybrid lodestar/multiplier approach as the proper method for determining the amount of attorney's fees in ERISA actions. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). This approach has two parts. First, the Court determines the lodestar amount by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id*. The party seeking fees must provide the Court with evidence of the hours worked and rates claimed. *Id*. The Court should exclude hours which are not reasonably expended because they are excessive, redundant, or otherwise unnecessary. *Id*

Second, the Court may adjust the lodestar upward or downward using a multiplier. *Id*. This adjustment is based on factors not subsumed in the initial calculation of the lodestar. *Id*. However, the lodestar amount is presumptively the reasonable fee amount, so a multiplier may be used to adjust the lodestar amount only in "rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id*. (Internal quotations and citations omitted).

A review of the attorney declarations filed in support of Plaintiffs' request for fees reveals that they were reasonable and sufficiently broken down into specific categories based on particular tasks, with some exceptions. The Court will address those exceptions and Defendants concerns below.

### A. *Hourly Rates*

Defendants take issue with the hourly rates billed by Plaintiffs' attorneys. The Court must determine a reasonable hourly rate by considering the experience, skill and reputation of the attorneys requesting fees. *Schwarz v. Secretary of Health and Human Services*, 73 F.3d 895, 906 (9th Cir. 1995). "A district court should calculate this reasonable hourly rate according to the prevailing market rates in the relevant community, which typically is the community in which the district court sits." *Id*. (Internal quotations and citations omitted). The relevant community in this case is Boise, Idaho, where this Court sits.

The Court has reviewed the affidavits of Plaintiffs' attorneys. These affidavits reveal that the rates charged by Plaintiffs' attorneys are reasonable. Mr. Huntley has over fifty years of experience, much of it in front of this Court. His hourly rate of $350.00 is in line with other attorneys with similar experience in this market. Mr. Mandell has nearly thirty years of experience, mostly with ERISA matters. He too has practiced before this Court, and his hourly rate of $315.00 is also in line with attorneys with similar experience in this market. Mr. Hughes has approximately fifteen years of experience, much of it in the ERISA field. His hourly rate of $225.00 is also in line with someone with that experience in this market. Finally, the billing rates for Ms. McKinney and Mr. Scott are representative of new associates in this market. (See e.g., *Suter v. National Rehab Partners Inc., et al.*, 1:03-CV-15-BLW, Dkt. 103; *LaPeter v. Canada Life Insurance of America*, 1:06-CV-121-BLW; Dkt. 123).

B.  *Specific Objections by Defendants*

Defendants argue that Plaintiffs' counsel failed to separate fees for work attributed to the claims on which Plaintiffs' prevailed from the claims on which they lost. These include billings for work done on behalf of Elliott, as well as work done on the statutory penalties cause of action. A review of the cost bills suggests there is some truth to Defendants' contention. However, it is likely impossible for the attorneys to separate these out. It is reasonable to believe that much of counsel's work overlapped – that is, much of counsel's work likely involved more than one plaintiff and more than one cause

of action.  Separating these out in a billing statement in most circumstances would be too much to ask of counsel.  Moreover, much of this overlapping work would still be properly recoverable because it also benefitted the other plaintiffs and claims on which Plaintiffs prevailed.  Therefore, rather than try to separate out these fees, which is likely impossible, the Court finds that reducing Plaintiffs' fee award by 10% overall will reasonably account for these matters.  This is so because Elliott was only one of approximately thirty plaintiffs, and the statutory penalties claim was not at the heart of the litigation.

The Court also notes that the relevant case law does not seem to suggest that the Court must award fees on a claim by claim basis.  As explained above, a party claiming fees need not be the prevailing party, so long as "the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue."  *Simonia*, 608 F.3d at 1120.  The Court believes an argument could be made that Plaintiffs should recover all fees regardless of whether they prevailed on every claim.  However, the Court feels that the better course is to discount the fees as explained above.  Doing so seems more in line with the bulk of the *Hummell* factors.  It more accurately addresses the degree of Defendants' bad faith, deters other plaintiffs from advancing less promising claims, and takes into consideration the merits of both parties' claims.

Defendants also take issue with Plaintiffs' counsel's claim for fees associated with their expert, Dr. Slaughter.  The Court finds that it was not unreasonable for counsel to

use Dr. Slaughter as an expert, even if the Court did not ultimately rely on his findings. Defendants cite no authority for the proposition that a fee award should be parsed out according to whether a witness was ultimately relied upon by the judge or jury. The Court will not remove the fees attributed to time spent with Dr. Slaughter from the fee award.

Defendants next take issue with the number of motions and matters Plaintiffs brought before the Court. The Court will not second guess counsel's every move in the case in order to determine whether fees are appropriate, except to say that the Court is intimately familiar with the complexities of this case, and Plaintiffs' motion practice did not seem overly excessive to the Court.

Defendants point out that Mr. Huntley's cost bill includes entries for timekeeper CFH at $350.00 per hour without any explanation of who that is or why he or she is entitled to bill the client in that amount. The Court agrees with Defendants' concern, and will subtract the amounts billed by CFH from the fee award. A review of the cost bill shows a total of $3,740.00 billed by CFH on 3/30/09, 3/31/09 and 4/01/09.

Defendants suggest that Plaintiffs seek fees for redundant and unnecessary attorney work. Defendants suggest that Plaintiffs' counsel often had matters reviewed by more than one attorney. This was not unreasonable in this case. Both parties hired specialized ERISA lawyers as well as experienced litigators to work on the case. Given the complexities of this case, which this Court experienced first hand, it was not

unreasonable to have both types of attorneys review matters.

Defendants indicate that it is important for the Court to "consider . . . the fact that Plaintiffs' counsel completely fails to account for the payment of attorney fees by Defendants for Katherine Ryan, or apportion fees before or during mediation for settlement of payment of *Roberts*." *Def's Br*. P. 17, Dkt. 161. The Court is not sufficiently informed regarding these settlement agreements to consider them – there are no affidavits or declarations regarding the payment of any such fees in the record.

### C.  *Multiplier*

Plaintiffs ask the Court for a 2x multiplier. As explained above, the Court may adjust the lodestar upward or downward using a multiplier. *Van Gerwen*, 214 F.3d at 1045. However, the lodestar amount is presumptively the reasonable fee amount, so a multiplier may be used to adjust the lodestar amount only in "rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the lower courts that the lodestar amount is unreasonably low or unreasonably high." *Id*. (Internal quotations and citations omitted). Some factors the Court should consider include the following: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) time limitations imposed by the client or the circumstances; (7) the amount involved and the results obtained; (8) the experience, reputation and ability of the attorneys; (9) the

"undesirability" of the case; (10) the nature and length of the professional relationship with the client; and (11) awards in similar cases." *Id*. at 1145, n.2.

Here, the Court finds that the bulk of these factors do nothing one way or the other to affect application of a multiplier. Therefore, the Court is not persuaded that this is the rare or exceptional case where a multiplier is appropriate. Although the case was complex and it took significant time and effort to obtain the judgment for Plaintiffs, the Court feels that the fees listed in counsel's cost bills accurately reflect the work done on the case. Of particular significance, the Court notes that two law firms worked the case from start to finish for Plaintiffs. Although the Court recognized that this was acceptable because of the complexities of the case, the Court also considers this a sort of 2x multiplier in and of itself. Accordingly, the Court will not apply a multiplier to the fee award.

**D.** *Final Fee Award*

Based on the foregoing, the Court finds that Defendants must pay Plaintiffs a total of $390,153.60 in fees.[2]

**E.** *Costs*

The Court "in its discretion may allow a reasonable attorney's fee ***and costs*** of action to either party" in an ERISA action. *Simonia*, 608 F.3d at 1120 (emphasis added);

---

[2] This amount is reached by taking $196,595.00 billed by the Huntley Law Firm, adding $240,649.00 billed by the ERISA Law Group, subtracting $3,740.00 billed by CFH, and subtracting 10% for work attributed to the Elliott and statutory penalties claims.

see also 29 U.S.C. § 1132(g)(1). For the reasons explained above, the Court will also award Plaintiffs their costs, but will deny Defendants' their costs. However, the Court agrees with Defendants' objection to most of Plaintiffs' costs.

Defendants do not dispute Plaintiffs' claim for $355.56 in costs for clerks and service fees. The Court will grant Plaintiffs those costs.

Defendants do object to costs incurred in ordering a transcript of testimony of Charley Jones during the trial. Local Rule 54.1(c)(2) states in relevant part that "[c]opies of transcripts for counsel's own use are not taxable unless approved in advance by the Court." They were not approved in advance in this case. Accordingly, the costs are not taxable, and the Court will deduct $198.00 from Plaintiffs' costs as requested by Defendants.

Defendants also object to Plaintiffs' request for deposition costs related to depositions of Elliott, Ryan and Wayment. Defendants contend that Elliott showed no "success on the merits" as required by *Simonia*, so his deposition costs of $155.13 should not be awarded. The Court agrees. Defendants also note that Ryan's claims were settled, so her deposition costs of $$138.38 also should not be allowed. The Court agrees – presumably that was part of the Ryan settlement. Finally, Defendants claim that Wayment's deposition costs should not be awarded because the deposition was not used at trial. That is not the standard. As explained above, Wayment showed a degree of success on the merits, so his deposition costs of $182.11 are properly taxable.

Defendants object to Plaintiffs' discretionary costs in the amount of $4,674.88 related to expert fees, mediation fees and mailing and telephone conference fees. With respect to expert fees, Defendants point to the Ninth Circuit decision holding that 29 U.S.C. § 1132(g)(1), ERISA § 502(g)(1)'s allowance for costs, empowers courts to award only the types of costs typically allowed by 28 U.S.C. § 1920, and only in the amounts allowed by that section itself, by 28 U.S.C. § 1821 or similar provisions. *Agredano v. Mutual of Omaha Companies*, 75 F.3d 541, 544 (9th Cir. 1996). Plaintiffs do nothing to dispute this. Accordingly, the Court will deny Plaintiffs' request for expert costs of $2,197.08.

As for the mediation, telephone and mailing costs, Plaintiffs cite no authority for allowing such costs. Accordingly, the Court will deny those costs in the amount of $2,187.50, $121.42 and $168.42 respectively. Accordingly, Defendants shall pay Plaintiffs $537.67 in costs.[3]

## ORDER

**IT IS ORDERED:**

1. Plaintiffs' Motion for Award of Attorney Fees (Dkt. 156) is **GRANTED**. Defendants shall pay Plaintiffs $390,153.60 in attorney fees and $537.67 in costs.

---

[3] The Court reaches this amount by adding $355.56 for clerks and service fees and $182.11 for the Wayment deposition fees. All other requests for costs are denied.

2. Defendants' Motion for Attorney Fees and Costs (Dkt. 157) is **DENIED**.

DATED: **November 23, 2010**



Honorable B. Lynn Winmill
Chief U. S. District Judge