UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| EDWARD BRASLEY, *et. al.*,<br><br>                   Plaintiffs,<br>  v.<br><br>FEARLESS FARRIS SERVICE STATIONS, INC., *et. al.*,<br><br>                   Defendants. | Case No. 1:08-cv-00173-BLW<br><br>**ORDER ON FINAL REPORT AND RECOMMENDATION OF SPECIAL MASTER** |

## INTRODUCTION

The Court has received and reviewed the Special Master's Report and Recommendation, (Dkt. 245), as well as the parties' objections to the report and responses to each other's objections. Upon receiving the Special Master's report, the parties requested time to make one last attempt at resolving this case. The Court granted the parties' request. Unfortunately, the parties did not resolve the case. Accordingly, the Court now enters its Order on Final Report and Recommendation of Special Master.

## RECOMMENDATION

The Court tasked the Special Master with determining whether Defendants have fully complied with the Court's Judgment and related Order (Dkts. 154 and 204). The Court explained that if the Special Master determined that Defendants have not fully complied with the Court's Judgment and related Order, he should recommend what Defendants must do to comply. The Court further instructed the Special Master that if he determined that Defendants cannot fully comply with the Court's Judgment and related Order because doing so would violate ERISA or tax laws, the Special Master must explain those issues and provide an alternative recommendation for making Plaintiffs whole based on the Court's Findings of Fact and Conclusions of Law (Dkt. 134), Amended Judgment (Dkt. 154), and Order (Dkt. 204). Finally, the Court asked the Special Master to opine on whether either party is entitled to attorney fees for the Special Master proceedings.

For reasons explained in his Final Report (Dkt. 245), the Special Master concluded that Defendants have not complied with the Court's Judgment and Order. This is not a surprise to the Court. However, the Special Master also determined that Defendants could not comply with the Judgment and Order because it would result in a violation of IRS code requirements for plan qualification and ERISA requirements for plan funding. The Court also knew this was a distinct possibility. Thus, according to the Court's direction, the Special Master provided an alternative recommendation for making Plaintiffs whole based on the Court's Findings of Fact and Conclusions of Law, Judgment, and Order.

The Special Master recommends that the Court treat the 1995 Plan, including the replacement plan the Court has ordered be established for current employees of Stinker Stores, Inc., as being terminated immediately in accordance with the PBGC requirements for termination of a single employer defined benefit plan. *Final Report*, p. 15, Dkt. 245. The Special Master recommends that the present value of the benefits accrued under the benefit formula of the 1995 Plan to the date of termination should be calculated as provided under the PBGC rules for lump sum payments. The amounts calculated, subject to adjustments, should then be "grossed up" for the amount of FICA and Medicare taxes payable by the Plaintiffs on the payments and the total amount should be paid to the Plaintiffs. *Id.*

The Special Master explains that the application of this recommendation would vary with respect to the different classes of the Plaintiffs. The first group of Plaintiffs, those currently employed by Stinker Stores, have already been provided with significant vested and non-forfeitable benefits under the Wholesale Plan established by Defendants. So it is recommended that the current account balances of the Plaintiffs participating in the Wholesale Plan be subtracted from the amounts calculated as the present value of their benefits accrued under the benefit formula of the 1995 Plan to the date of termination, and that only the net amount be paid to this group of Plaintiffs. Likewise, only the net amount would be subject to a gross up for FICA and Medicare taxes. But Defendants should not be required to continue to make contributions to the Wholesale Plan. The Wholesale Plan should be "frozen" by the Defendants and maintained until

payments of benefits are made in accordance with its terms, or the Wholesale Plan could be terminated and distribution of benefits made now with the ability for those payments to be rolled over to individual retirement accounts.

The second group of Plaintiffs are those not currently employed by Stinker Stores, and who are currently receiving payment of benefits under the terms of the 1995 Plan from the general assets of Stinker Stores. The Special Master notes that they are subject to the risk of losing their future benefits in the event of Defendants' insolvency. This would not be the case if the 1995 Plan had been properly established as a qualified defined benefit plan. To make certain that this group of Plaintiffs are made whole as to their promised benefits under the 1995 Plan, the Special Master indicates that the present value of the future amounts of their benefits accrued under the benefit formula of the 1995 Plan as of the date of termination should be calculated and paid to them in a lump sum, grossed up for the amount of FICA and Medicare taxes payable by them. The Special Master recommends that the Court direct the Plaintiffs to request Mr. Turpin to provide calculations of lump sum payments on a termination basis, taking into account any benefits paid to date, for this group of Plaintiffs based on the information currently available in the record. He recommends that Defendants have the right to review and comment on such calculations by Mr. Turpin.

The third group of Plaintiffs are not currently employed by Stinker Stores, but have not yet begun to receive any payment of benefits under the terms of the 1995 Plan. They are also subject to the risk of losing their future benefits in the event of the

insolvency of the Defendants. Like group two, this would not be the case if the 1995 Plan had been properly established as a qualified defined benefit plan. The Special Master recommends that the present value of the amounts of their benefits accrued under the benefit formula of the 1995 Plan as of the date of termination be calculated and paid to them in a lump sum, grossed up for the amount of FICA and Medicare taxes payable by them. The Special Master notes that the Turpin Affidavit provides an estimate of the amounts payable to Plaintiffs Brasley and Fisher based upon an assumed termination date of August 1, 2013. The Special Master recommends that Betty Newell be included in this group with adjustments made for her prior receipt of a $30,000 partial payment of benefits on September 1, 2003 and the time value of that payment.

     Finally, the Special Master addresses the issue of whether the recommended lump sum payments should also be grossed up for the full income taxes payable on these amounts because they are not eligible for rollover to an individual retirement account as they are not being paid from the trust of a Code Section 401(a) qualified retirement plan. The Special Master suggests that this potential element of damages is too speculative to be reasonably ascertained and recommends against including it as part of a remedy. The Special Master recommends that the Court adopt a method suggested by the Defendants to remedy the adverse tax consequences to the Plaintiffs caused by the failure to establish and maintain the 1995 Plan as a tax qualified plan. It requires Defendants be responsible to pay the difference in income tax due because of the increase in each Plaintiff's

marginal tax rate in the year of the taxable payment over the marginal tax rate that would apply without the increased income.

**OBJECTIONS**

Neither side completely agrees with the Special Master's recommendation. Plaintiffs suggest the recommendation does not account for death benefits. Defendants do not think the Court should order that the plan be terminated, they take issue with the recommendation that the five former emplyees currently retired and receiving benefits under the 1995 plan be paid lump sum amounts, and they ask the Court to modify the recommendation about the benefits to Brasley, Fisher and Newell. Defendants also ask for a minor modification to the recommendation on income tax consequences. Finally, both parties take issue with the Special Master's recommendation on attorney fees.

**CONCLUSION**

The Court agrees with the Special Master's recommendations on all aspects except the attorney fee issue. With regard to attorney fees, the Court does not necessarily disagree, but the Court reserves ruling on that issue at this point. The Court will address the attorney fee issue once the matter is fully resolved. The Court adopts all other recommendations of the Special Master, and overrules the parties' objections.

**ORDER**

**IT IS ORDERED:**

1. The Special Master's Final Report and Recommendation (Dkt.245) is **ADOPTED**. The parties shall comply with all recommendations in the

report other than the attorney fees issue as if it were an order by the Court. The parties shall retain the assistance of the Special Master to the degree needed to implement the recommendations. The parties shall notify the Court when the recommendations are complete, and the Court will then address the attorney fee issue.



DATED: May 23, 2014

_____
B. Lynn Winmill
Chief Judge
United States District Court