# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

EDWARD BRASLEY, et al.,

      Plaintiff,

      v.

FEARLESS FARRIS SERVICE
STATIONS, INC., et al.,

      Defendants.

Case No. 1:08-cv-00173-BLW

MEMORANDUM DECISION AND
ORDER

## INTRODUCTION

The Court has before it Plaintiffs' Renewed Motion for Attorney Fees (Dkt. 351) and Motion for Order for Leave to File Supplemental Briefing (Dkt. 356). The motions are fully briefed and at issue. For the reasons explained below, the Court will GRANT the Renewed Motion for Attorney Fees in part (Dkt. 351), and the Motion for Leave to File Amended Briefing (Dkt. 356) will be DEEMED MOOT.

## BACKGROUND

The background of this case is well known to each party. Previously, this Court considered Plaintiffs' Motion for Attorney Fees (Dkt. 313) and held that Plaintiffs had not attained "some degree of success on the merits." (Dkt. 323). On appeal, the Ninth Circuit disagreed. *See Brasley v. Fearless Farris Serv. Stations*, 714 F. App'x 790, 791 (9th Cir. 2018). On remand, the Court now considers whether the factors delineated in

*Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 453 (9th Cir. 1980) justify a discretionary award of both district court and appellate attorney fees. *Id.*

## LEGAL STANDARD

The Court "in its discretion may allow a reasonable attorney's fee and costs of action to either party" in an ERISA action. *Simonia v. Glendale Nissan/Infiniti Disability Plan*, 608 F.3d 1118, 1120 (9th Cir. 2010); *see also* 29 U.S.C. § 1132(g)(1). The party claiming fees and costs need not be the prevailing party but must show some degree of success on the merits. *Id.* (citing *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252 (2010)). A "claimant can satisfy that requirement if the court can fairly call the outcome of the litigation some success on the merits without conducting a lengthy inquir[y] into the question whether a particular party's success was substantial or occurred on a central issue." *Id.* at 1120–21 (citing *Hardt*, 560 U.S. at 255). Once a party establishes "some degree of success on the merits," the Court may exercise its discretion to grant fees and costs under § 1132(g)(1). *Id.* The five factors set forth in *Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446 (9th Cir. 1980) guide this Court's decision.

The factors are:

> "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions."

*Id.*

"None of the *Hummell* factors is necessarily decisive; various permutations and combinations can support an award of attorney fees." *Paddack v. Morris*, 783 F2d 844, 846 (9th Cir. 1986). Unless Defendants can show the existence of "special circumstances [that] would render such an award unjust," the Court's discretionary decision will stand. *McElwaine v. US W., Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999).

## ANALYSIS

1. **Plaintiffs' Motion for Attorney Fees Prior to Appeal**

The court will grant Plaintiffs' request for a fee award at the district court level. The Ninth Circuit determined, on appeal, that Plaintiffs had attained some degree of success in this Court (9th Cir. Dkt. 54). For that reason, the Court now applies the *Hummel* factors to the fees incurred between 2010 and 2015.

### (1) *Culpability/Bad Faith*

Both parties urge this Court to consider different conduct when weighing the first factor. Defendants suggest the court weigh the Plaintiffs' post-judgment conduct. *Def.'s Opp. Br.*, Dkt. 352, pp. 10-11. However, in this case, the Defendants are the "non-claiming party." *See Micha v. Sun Life Assurance of Can., Inc.*, 874 F.3d 1052, 1058 (9th Cir. 2017). As such, the Defendants conduct is squarely at issue and will not be disregarded.

Plaintiffs, on the other hand, would have this Court consider all of Defendants' conduct before and after the time of filing in 2008. Dkt. 351, pp. 2-8. In support of this view, Plaintiffs cite to *Micha v. Sun Life Assurance of Can., Inc.*, which holds that the

court must consider any pre-appeal bad faith or culpability in determining whether to award attorney fees. 874 F.3d at 1058. However, *Micha* concerned a factually distinct case.

In *Micha*, the plaintiffs were awarded litigation attorney fees and the defendants appealed to insulate itself from the award of fees. *Id.* at 1054–55. The defendants then aggressively fought the award on appeal, even filing a petition for certiorari, causing significant expenses to the appellees. *Id.* Unlike *Micha*, here Plaintiffs were awarded attorney fees by this Court, which were paid. Dkt. 173. Now Plaintiffs move for attorneys' fees a second time. Unlike the defendants in *Micha*, here Defendants were not attempting to insulate themselves by appealing an award of fees after the 2010 trial. Rather, it was Plaintiffs who challenged the sufficiency of Defendants' compliance with the judgment, which continued the litigation. Thus, *Micha* is distinguishable from the case at hand.

Indeed, the Court previously determined that forcing the Plaintiffs to litigate these issues at a jury trial with a judgment in hand constituted "at least some degree of culpability or bad faith on the part of Defendants." Dkt. 167. But Defendants paid or settled that order of $390,153.60 in attorney fees after the 2010 trial. Dkt. 172. To again consider those acts would be unjust. Fairness requires this Court to consider whether Defendants acted with bad faith solely during post-judgment litigation.

After the Court issued its Amended Judgment, Defendants were left to "fund a plan, qualified and consistent with the requirements of ERISA." Dkt. 145, ¶ 6.

Defendants attempted to create this qualified plan, but upon Plaintiffs' objection the Special Master ultimately determined that "the Defendants [could not] fully comply with the Court's Amended Judgment and related Order because doing so would violate ERISA or tax law." Dkt. 245, pp. 12. Thus, the Court's Amended Judgment left Defendants between a rock and a hard place: no matter how they proceeded, Defendants would ultimately be in violation of federal law or the Amended Judgment.

To hold that Defendants' effort to comply with the Amended Judgment constituted bad faith would punish Defendants for trying to resolve this issue in accordance with the Court's terms. Instead, the Court faults the subsequent litigation on a lack of precedent and the inherent complexities of ERISA law. For this reason, bad faith will not be attributed to Defendants' post-judgment conduct.

### (2) *Ability to Satisfy a Fee Award*

When an action is brought by an ERISA beneficiary, a defendants' "ability to pay should weigh strongly in favor of an award of attorney fees. *Micha*, 874 F.3d at 1058 (citing *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 590 (9th Cir. 1984)). Like in 2010, Defendants concede that their ability to pay is greater than that of Plaintiffs. Dkt. 352-1, pp. 11. Yet, Defendants also argue that Plaintiffs' counsel are "well able to absorb the loss of attorney fees for their pre-appeal conduct." *Id.* This argument improperly conflates two distinct factors: (1) bad faith, and (2) the *parties* ability to satisfy an award. In considering the latter, the Court evaluates the "resources available to the pensioners" not their attorneys. *Smith*, 746 F.2d at 590. Because Defendants do not dispute their

ability to pay a fee award or argue that Plaintiffs are better suited to do so, this factor weighs in favor of Plaintiffs.

### (3) *Whether A Fee Award Would Deter Others*

While an award of attorney's fees may deter future defendants from short changing judgments awarded for ERISA violations, Defendants argue that such an award may also encourage plaintiffs to frivolously challenge compliance with the court judgments. These are serious risks. On one hand, courts impose judgments in ERISA cases with the expectation that beneficiaries will be made whole. *See McElwaine*, 176 F.3d at 1171–74 (an award would "deter other employers from forcing beneficiaries to undertake costly litigation to preserve their claims"). On the other, courts want to deter beneficiaries from bringing meritless claims.

Yet, the Ninth Circuit has characterized Plaintiffs' post-judgment conduct in a favorable light. On appeal, the Court found that Plaintiffs had some success on their claims in post-judgment litigation. To the extent that Defendants argue that a large portion of the fees sought in this matter are related to the unsuccessful and meritless positions Plaintiffs took post-judgment, the Court rejects that argument. Because the Court of Appeals held that Plaintiffs' post-judgment claims had merit, imposing a fee award against Defendants would more likely deter employers from short changing employees' ERISA judgments than encourage "other litigants from relentlessly pursuing groundless [post-judgment] claims." *Credit Managers Assoc. v. Kennesaw Life & Acc.*

*Ins. Co.*, 25 F.3d 743, 748 (9th Cir. 1994). Therefore, the third *Hummel* factor also weighs in favor of an award of attorney fees.

### (4) *Benefit to All Participants/Significant Legal Questions*

There are two considerations within the fourth *Hummel* factor. The first concerns whether Plaintiffs sought to benefit all participants and beneficiaries. *Hummel*, 634 F.2d at 453. As to this question, the Court agrees with Plaintiffs' characterization of the 2010-2015 litigation as impacting "most or all Participants." Dkt. 353, pp. 9. From 2008 to 2010, Plaintiffs represented 28 Participants from the 1995 Plan liquidated by Defendant. Dkt. 351, pp. 4. Approximately twelve participants settled their claims with Defendants from 2010 to 2015, leaving seventeen Participants to benefit from Plaintiffs' post-judgment work. *Id.* Given that a majority of the remaining Plan beneficiaries were represented, the Court agrees that Plaintiffs sought to benefit all remaining participants post-judgment.

Next the Court determines whether Plaintiffs sought to resolve any significant legal questions. *Hummel*, 634 F.2d at 453. Defendants invite the Court to focus, in large part, on the past three years of post-judgment litigation. Defendants argue that litigation from 2015-2018 has only focused on attorney fees, and therefore should not constitute a significant legal question. The Court declines to restrict its analysis to the prior three years. Before 2015, Plaintiffs litigated some important ERISA issues concerning Defendants' satisfaction of the Amended Judgment. These issues were important because they related to the repayment of Plaintiffs' liquidated benefits. Others were not. Because

these issues did or would have benefited the seventeen remaining participants, this factor weighs in favor of Plaintiffs' award.

## (5) *Relative Merits of the Parties' Position*

Although Plaintiffs overstate their success on the merits of this case, the last *Hummel* factor also weighs in favor of granting attorney fees. In addition to the outcome of the underlying suit, the court may analyze under this factor whether the law was clear at the time of litigation, whether the losing party had a strong equitable argument despite it ultimately being foreclosed on, and whether the losing party's position was simply "incorrect" rather than "unmeritorious". *Honolulu Joint Apprenticeship & Training Comm. of United Assoc. Local Union No. 675 v. Foster*, 332 F.3d 1234 (9th Cir. 2003). When considering the fifth factor, "courts should be careful neither to penalize [parties] for seeking to enforce employer obligations under ERISA nor to encourage employers to be indifferent to their obligations." *Carpenters S. Cal. Admin. Corp v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984).

A brief summary of the procedural posture is helpful to evaluate this factor. After Plaintiffs received the Amended Judgment, Defendants were ordered to report their progress in satisfying that judgment. Dkt. 154. Post-judgment litigation began with Plaintiffs' objection to that report. Dkt. 166.

Plaintiffs' original position, post-judgment, was that the Defendant had not complied with several aspects of the Amended Judgment. *See* Dkt. 190. This overarching issue would eventually be determined true, but not all of Plaintiffs' objections were of

merit. Plaintiffs asserted that Defendants were noncompliant in the following ways: (1) inadequate plan funding; (2) a $2,295.00 Deficiency in the Settlement Betty Newell's claim; (3) the Imposition of FICA Taxes on all Participants; (4) the 8% Discount Rate for lump sum payments in lieu of annuity payments violated the Order (advocating for a 4.5% to 5.5% rate); and (5) the funding of death benefits. Dkt. 198-1. At all times, Plaintiffs maintained that the plan could and should be funded to make "Plaintiffs whole." *Id.* at 3.

In response to Plaintiffs' objections and request for a special master, Defendants argued that the "1995 Plan was not a qualified plan and could not be made to be one retroactively." Dkt. 199 at pp. 8. This was ultimately correct. *See* Dkt. 245, pp. 11. However, Defendants incorrectly continued to maintain that Plaintiffs were required to pay their own FICA taxes on any settlement or distribution from the suit. *Id.* After fully briefing the issues, both parties put them before a Special Master. *See* Dkt. 222.

Almost two years after Plaintiffs' objection, the Special Master ultimately determined that Defendants had not satisfied the Amended Judgment. But, on the conduct of the parties, the Special Master determined that both Parties had frustrated the proceedings, "remained entrenched in their positions," and "clouded the issues." Dkt. 245. As to Defendants' conduct, he stated:

> Defendants, for example, have continued to state that the 1995 plan is a non-qualified deferred compensation plan [], but both this Court and the Roberts court have previously ruled otherwise. … In addition, Defendants have continued to assert that the payment of FICA taxes remains an open issue … but the Court has previously ruled in paragraph 3 of the Related Order, Dkt. 204, that the Defendants should pay FICA taxes due on

payments to Plaintiffs.

Plaintiffs also hindered the resolution of this case. In the Special Master's Final Report, he stated:

> The Plaintiffs … continued to dispute the settlements obtained by Defendants from several former participants in the 1995 plan in connection with cash lump sum cash payments [], but the Court previously ruled these settlements resolved the 1995 Plan issues as to those individuals.

*Id.*

To determine either party was particularly meritorious in its position post-judgment would ignore the procedural posture of this case. For this reason, the Court is unconvinced that Plaintiffs "won" the list of fourteen post-judgment issues in their briefing.[1] Dkt. 351-1, pp. 9.

But, undeniably, Plaintiffs were victorious on several issues. The Special Master determined that Defendants were not in compliance with the Court's Order, which, in a roundabout way, vindicated Plaintiffs' original objection. Furthermore, despite the Court's previous ruling, Defendants maintained that FICA taxes should be paid by individual Plaintiffs. This issue was improperly maintained by Defendants and weighs in favor of Plaintiffs' request for attorney fees. Although the ultimate disposition of this case was in stark contrast from the positions first proffered in Plaintiffs objections, the

---

[1] Many of the "wins" Plaintiffs list are a result of the Special Masters report. However, the Special Master ultimately determined that the Plaintiffs proposed funding of the Plan would be impossible.

(Continued)

Court finds that Plaintiffs did bring some meritorious claims. The Court does not fault Plaintiffs for losing certain issues.[2] Thus, this factor also weighs in favor of Plaintiffs' award.

### B.      Conclusion

On balance, the five *Hummel* factors weigh in favor of awarding attorney fees to Plaintiffs, especially in light of the Ninth Circuit's requirements to "keep at the forefront ERISA's purposes that 'should be liberally construed in favor of protecting participants in employee benefit plans." *McElwaine*, 176 F.3d 1167, 1173 (9th Cir. 1999). Of the factors, all but bad faith favors an award of attorney fees. In the Ninth Circuit, "bad faith is a factor that would always justify an award, [but] it is not required." *Smith*, 746 F.2d at 590. Accordingly, the *Hummel* factors guide this Court to conclude that Plaintiffs are entitled to their reasonable pre-appeal fees.

### C.      There are no special circumstances warranting a denial of fees

None of Defendants' bulleted "special circumstances", (Dkt. 352, pp. 15-16), render an award of fees unjust. Defendants argue that because Plaintiffs did not advocate for the 1995 Plan and the Qualified Plan to be terminated, they created special circumstances justifying a denial of fees when that result occurred. But, undisputedly,

---

[2] Despite losing initial issues, ERISA employee plaintiffs are entitled to a reasonable attorney's fee "if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Smith*, 746 F.2d 587, 589. *See also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (winning an issue crosses the "statutory threshold" for awarding fees).

this action took an unpredicted course after being reviewed by the Special Master. Before the Special Master proposed to eliminate the Plans all together, Plaintiffs were merely attempting to enforcing the rights laid out in the Court's Amended Judgment (Dkt. 166), as they interpreted them. Given the complexities of this area of law and scarce precedent, both Parties advocated for some ultimately unsuccessful positions. But this alone does not constitute a "special circumstance." The remainder of Defendants' arguments have either been addressed in the above application or relate to delay. To the delay component, the Court finds that neither party was quick to resolve this case. Overall, Defendants have failed to show the existence of special circumstances rendering an award unjust.

## 2.    Plaintiffs Are Entitled to Their Reasonable Fees

### A.    Legal Standards Governing Attorney Fees ERISA Cases

In ERISA actions, "the court in its discretion may allow a reasonable attorney's fee and costs." 29 U.S.C.A. § 1132(g)(1). A two-step lodestar/ multiplier approach is used to calculate reasonable attorneys' fees. *Welch v. Metropolitan Life Ins. Co.,* 480 F.3d 942, 945 (9th Cir.2007). "First, the court establishes a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Id.* "In addition to setting the number of hours, the court must also determine a reasonable hourly rate, 'considering the experience, skill, and reputation of the attorney requesting fees.'" *Welch,* 480 F.3d at 946 (quoting *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir.1986)). "Second, in rare and exceptional cases, the

district court may adjust the lodestar upward or downward using a multiplier based on facts not subsumed in the initial lodestar calculation." *Id.*

### B. Reasonable Attorneys' Fees are Based on the Hourly Rates Supported by the Record and the Actual Hours Worked

#### (a) Reasonable Hourly Rate

Plaintiffs seek an award of $381,082 based on an accounting of time expended by counsel in this case. The Court has considered the declarations of Jeffery Mandell, Loren K. Messerly, and Robert Huntley[3] submitted by Plaintiffs to demonstrate the reasonableness of the rates requested by each attorney in the case, (*see Decls.*, Dkt. 351, Attachs. 2-4), and determines the hourly rates of $400 for Mandell, $285 for Messerly, and $450 for Huntley are reasonable for the type of work performed in Boise, Idaho, taking into consideration each attorney's years of experience. *See* Dkt. 313-3; Dkt. 351-3; Dkt. 351-4.

Defendants take issue with opposing counsel, specifically Messerly, requesting his current hourly rate ($285) when that number differed in briefing on appeal ($225). Dkt. 352, pp.17-18. The Court is unpersuaded that this constitutes bad faith, let alone "perjury." In the Ninth Circuit, it is appropriate to compensate deferred payment "by applying the attorneys' current rates to all hours billed during the course of the litigations." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1305

---

[3] These three parties will be referred to hereafter respectively, as "Mandell", "Messerly", and "Huntley."

(9th Cir. 1994); *Welch*, 480 F.3d at 947. All three attorneys request a rate greater than that submitted earlier in this litigation, e.g., Huntley from $350 to $450. Given the experience of each attorney (Huntley: 59-years, Mandell: 36-years, Messerly: 15-years) and the prevailing rates in the District of Idaho[4], it is reasonable to request a greater fee now than at the beginning of this prolonged litigation, which began a decade ago. In fact, the rate of $285 per hour for Messerly's time is reasonable because it is in the lower end of the hourly rates customarily charged and it reflects his normal billing rate. *See* Dkt. 351-3, pp. 5.

As to the attorney's employed by the ERISA Law Group, the Court is concerned with unexplained billing. The Court has no concern with the hourly rate of Ms. McKinney, which was previously approved by this Court. Dkt. 167. However, while Mandell explained the changes in his requested rate, John Hughes has not. And Mr. Hughes' rate does vary: $225 to $275 from December 2010 to May 2012; $280 in December 2013; $295 in January 2014; $300 in March 2015; $295 in July 2015; and $305 in April 2016. *See* Dkt 351-4, Ex. B-C. The Court has agreed to compensate attorneys in this case at their current reasonable rate. Based on the minimal record before this Court (Dkt. 205-2; 351-4), Mr. Hughes' reasonable rate will be adjusted to $290 and applied to all reasonably expended time.

---

[4] *See e.g., Cmty. House, Inc. v. City of Boise*, No. 1:05-CV-00283-CWD, 2014 WL 1247758, at *1–12(D. Idaho Mar. 25, 2014) (conceded that attorneys with 15 years of experience have rates between $275-$325, while a lead attorney with 34 years of experience had a rate of $400).

*(b)*    *Time Expended*

The Court has carefully reviewed the billing records of all three-counsel attributed to this case, and the Court agrees with Defendants that some of those hours were not reasonably expended.  In determining the appropriate lodestar amount, the court may exclude from the fee request any hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). The Court first addresses the objections from Defendants and then addresses its own concerns.

*(i)*    *Defendants' Specific Objections to Huntley's Request*

Defendants bring several challenges to the hours spent by Huntley in this litigation. *See* Dkt. 352, pp 16-17. However, the Court will not address generalized grievances without specific objections grounded in fact and law. *See* District of Idaho Local R. Civ. 54.2 (the objecting party must set forth specific grounds of objection). More specifically, Defendants argues that:

- A motion for punitive damages is mistakenly included in Huntley's declaration which should be excluded;

- All of Huntley's time outside the Special Master's appointment and his final report should be excluded;

- Unsuccessful settlement negotiations should be excluded;

- Time spent requesting unreasonable fee motions should be excluded;

- Certain entries have been duplicated before this Court and the Ninth Circuit, which is improper and should be excluded.

The Court agrees that it appears Huntley has confused this case with another. Huntley's Declaration states that on June 26, 2013, he spent 2.1 hours to "[r]esearch and draft motion and brief for punitive damages …." Dkt. 313-2, pp.1. As this Court has noted in the past, "'punitive damages are not available under ERISA.'" *Holl v. Amalgamated Sugar Co. LLC*, No. 1:13-CV-00231-CWD, 2014 WL 1672873, at *12 (D. Idaho Apr. 28, 2014) (quoting *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1009 (9th Cir.1998). If Huntley asserts that this was not a mistake, then the Court holds that spending 2.1 hours to find this easily discoverable law excessive. The Court will remove time attributed to researching and preparing a motion for punitive damages from the fee award.

Regarding Defendants' contention that Huntley has duplicated time spent on a fee motion before the Ninth Circuit and this Court, Defendants fail to set forth which time entries are duplicative or "specific grounds of objection." District of Idaho Local R. Civ. 54.2. Likewise, Defendants have failed to cite any law supporting their assertion that it would be inappropriate to consider settlement negotiations or what specific entries they object to. Therefore, the Court will not exclude time spent on fee motions or on settlement negotiations.

Defendants next contend that Huntley should not be rewarded for the time he expended challenging the Special Master's First Report. The Court agrees. It was Huntley who, on behalf of Plaintiffs, requested this action be put before a Special Master post-judgment. Dkt. 190. In his report, the Special Master referenced Plaintiffs' expert Mr.

Turpin's calculations and methodology for determining interest rates for any lump sum benefit payments, which used Code Section 417(e) rates. Dkt. 245. The Court adopted the findings of this report as its own. Dkt. 267. Plaintiffs then erroneously read the Special Master's report as requiring optional PBGC interest rates which would result in a $287,377.69 greater payment to Plaintiffs. Dkt. 287. Plaintiffs then opposed Defendants' motion to have the author of the First Report clarify his position. Dkt. 296. Despite their objections, the issue was sent to the Special Master a second time for clarification, (*Second Huss Report,* pp. 4, Dkt. 303) and required a *de novo* review of the previous Order. Dkt. 310. This required the Court to reiterate that lump sum benefit payments should be paid with the interest rates referenced in the Special Master's First Report (Code Section 417(e)) for minimum lump sum distributions, not those requested by Plaintiffs. Because the issue was already determined, the Court exercises its discretion to not award fees on this issue. As a result, Huntley's fees will be reduced by 73.5 hours.

*(ii)    Huntley Block Billing*

The Court, on its own initiative, takes issue with prevalent block billing found in Huntley's declaration. A fee applicant should maintain billing records in a manner that enables a reviewing court, and opposing counsel, to easily identify the hours reasonably expended on a particular task. *Hensley*, 461 U.S. at 437. Block billing, which bundles tasks in a block of time, makes it extremely difficult for a court to evaluate the reasonableness of the number of hours expended. *See Role Models America, Inc. v. Brownlee*, 353 F.3d 962, 971, 359 U.S. App. D.C. 237 (D.C. Cir. 2004). The Court may

reduce the requested fee based on this lack of specificity. *Fischer v. SJB-P.D. Inc.*., 214 F.3d 1115, 1121 (9th Cir. 2000) (district courts may reduce hours where requests are poorly documented). *See Lee v. Commissioner*, 2009 WL 3003858, *1 (D. Ore. Sept. 17, 2009) (reducing award by 10 percent to account for block billing).

Huntley has provided block entries for his time in this matter. For example, on August 8, 2012, Attorney Huntley states he did the following over the course of 2.3 hours: "Email correspondence with ERISA Group regarding stipulation and Special Master, research previous pleadings and proposed stipulation and forward same to Mandell." Dkt. 313-2, pp. 7. The Court counts at least 5 different tasks bundled into this block of time. This is the case in many, if not most, of Huntley's entries.[5] As a result, and in the Court's discretion, all of Huntley's fees will be reduced by 20%.

        *(iii)    Defendants' Objection to Attorney Mandell's Expended Time*

Defendants assert that Mandell's fee request prior to appeal should be denied in its entirety based on the following reasons:

- Mandell sought a result which had no merit and was rejected;

- The proposed time entries are duplicative;

---

[5] Going forward, the Court encourages counsel to bill items such as "drafting and researching" or "draft and file and serve" in separate billing increments.

- It includes time spent objecting to the Special Master's First Recommendation; and

- "Huntley and Messerly feel unable to vouch for the amount and accuracy of Mandell's claimed hours and fees." Dkt. 351-1, pp. 19, fn. 6.

Although a reduction is necessary for seeking a meritless claim, it is not a basis for wholesale denial of fees. That reduction will come in the same form as Attorney Huntley's. The Court denies attorney fees to Mandell for time spent challenging the First Report of the Special Master. As a result, Mandell will not be awarded any attorney fees from September 8, 2014 – when the litigation began to focus almost entirely on calculations for lump sum payments –  to July 13, 2015, when Mandell's itemized billing moved to the attorney fee issue. Based on this Court's own arithmetic, Mandell's hours will be reduced by 84.3 hours for time expended on objecting to the Special Master's First Report. John Hughes' hours will also be reduced by 29.4 hours.

As to Defendants' contention that Mandell's hours should be excluded because of a footnote in his co-counsels' briefing, the Court is unmoved. Pursuant to Local R. Civ. 54.2, Defendants are required to state "specific grounds of objection." Merely alleging that co-counsel *may* be warning the Court of possible impropriety is not a sufficient ground to decrease an award of attorney fees. Rather, the Court tends to agree with Mandell, that attorneys in separate offices, "cannot vouch for another's time." Dkt 355, pp. 2. Without case law to support their position, Defendants' objection is without merit.

Lastly, the Court addresses Defendants' bare-bones allegation of duplicative billing. The Court again directs Defendants to the requirement of specific grounds of objection. Furthermore, the Court is persuaded that because "Mandell's fees before the Ninth Circuit were not submitted to the Ninth Circuit, <u>and [Plaintiffs] do not seek recovery for [that $33,235.50]</u> here … Plaintiffs reductions should more than compensate for any duplications of that work." Dkt. 351-3, ¶ 25 (emphasis provided). Therefore, the Court will not reduce any fees on the basis of duplication.

### (iv)    Mandell's Billing

Like Huntley, Mandell and his staff used significant block billing throughout their time keeping record. One particularly dense bundle of tasks was annotated on October 13, 2014, where Mandell inserted the following:

> Prepare brief opposing Defendants' opposition to our motion to use James Turpin's calculations and regarding referral to Special Master; Continue to review various case law and secondary authorities to confirm that post termination amendment is prohibited per se by Title IV; Continue to review case law, statutes and various regulations confirming that the PBGC rates apply equally to standard and distress terminations, and Defendants allegation of their application solely to insolvent or bankrupt plans is incorrect; Brief further review of anti-cutback rule in Title I and Title II to confirm their unlikely application to interest rate amendment, even if held to be done on a timely basis; Continue to review and confirm that two sets of PBGC regulations confirming Section 417(e) is a floor only and that higher PBGC rates still are used and valid currently, regardless of REA, GATT, and PPA; Discuss with James Turpin his conclusion that Defendants violated its own amendment, because it amended the plan for GATT and not PPA, but used the PPA rates; Reviewed Defendants' Notice to Participants as compared with PBGC and Title I rules governing notice of intent to terminate to confirm noncompliance with ERISA Section 204(h) and Code Section 4980F.

Dkt. 351-4, pp 62. Mandell asserts that this block paragraph is reflective of exactly 12

hours of work, for which he requests $4,020. The next day, Mandell annotated the next

paragraph for 12.1 hours of work:

> Review James Turpin Affidavit and phone conference with him to
> understand certain matters; Continue to review various case law,
> statutes and various regulations to confirm that post termination
> amendment is prohibited, to also confirm that post termination
> amendment is prohibited, to also confirm that the PBGC rates, as
> opposed to the 417(e) rates, apply equally to standard and distress
> terminations and not just to insolvent or bankrupt plans; Final review
> of PBGC regulations preambles and history confirming Section
> 417(e) treatment as a floor only and exception regarding Retirement
> Equity Act is inapplicable and that higher PBGC rates still are valid
> currently, regardless of REA, GATT, and PPA; Review Special
> Master Final Report to confirm review of 1955 document is
> appropriate to assert such plan's failure to include Firestone
> interpretive authority applies now to Defendants; Review legislative
> history regarding various iterations of changes in interest rates
> ERISA used over period of time of this plan's existence, confirming
> Hames Turpin analysis; Review notice of intent to terminate to
> finally confirm noncompliance with ERISA Section 204(h) and
> Code section 4980F; Continue to prepare Plaintiffs' Combined (1)
> Reply to Defendants' Opposition to Plaintiffs' Motion for Order
> Adopting Turpin's Calculations and (2) Opposition to Defendants'
> Motion to Refer Issue to Special Master; Review Declaration of
> James E. Turpin; Prepare Affidavit of Jeffery Mandell

*Id.* at 63. By combining every task performed in a twelve-hour period, it is impossible to

determine the reasonableness of time spent on any individual task. Surely, awarding full

fees to Mandell based on this timekeeping would question this Court's judgment and

promote unaccountable billing practices in the District. As a result, Mandell and John

Hughes will have their overall award will be reduced by 20%. *See Lahiri v. Universal*

*Music & Video Distrib. Corp.,* 606 F.3d 1216, 1222–23 (9th Cir.2010) (affirming district

court's reduction of 80% of attorneys' and paralegals' hours by 30% to account

for block-billing).

The Court will also exclude hours expended by timekeeper Sarah Simmons. A description of Ms. Simmons' qualifications or experience is absent from Mandell's current affidavit, (Dkt. 168-3, Dkt. 351-4), or in any prior submission to the Court (*See* Dkt. 313-4). The Court, for a similar reason, previously excluded entries from an anonymous timekeeper in Huntley's award in 2010. *See* Dkt. 167. Similarly, it is impossible to evaluate whether Ms. Simmons' hourly or time expended researching and reviewing document is reasonable. The Court would presume that Ms. Simmons is a paralegal, but Mandell noted in his affidavit that Ruby Perren and Erin Miller are his paralegals in this case. *Id.* Therefore, the Court will subtract the amounts billed by Ms. Simmons from the fee award. A review of the cost bill shows a total of $12,722.50 between July 7, 2015 and July 13, 2016.

(v) *Defendants' Objection to Attorney Messerly's Expended Time*

Defendants last objections concern Messerly's: (1) request of $18,000 in fees for Plaintiffs Motion for Reconsideration of this Court's denial of fees; and (2) the amount of time expended on appeal.

In support of their first objection, Defendants argue that Messerly was not associated with counsel during the Motion for Reconsideration of the denial of fees, and therefore; should not be entitled to a fee. Again, Defendant has failed to cite any law bolstering his objection. As far as this Court is aware, the issue of whether an

unassociated attorney is entitled to fees has not been addressed in this circuit. However, the Ninth Circuit has stated, "[t]here is no categorical prohibition that prevents a district court from awarding attorney's fees to a foreign attorney who has not formally associated as counsel of record" when the unassociated attorney provided "benefit" to counsel and "did not duplicate the services." *Wang v. Douglas Aircraft Co.*, 121 F.3d 719 (9th Cir. 1997). Although *Wang* concerned an international law firm, the same rational applies here: "If [Messerly] performed such services, the district court should make an appropriate award of attorney's fees based on the reasonable value of the services …" *Id.*

As to Defendants' second objection, the Court declines to evaluate whether the 316 hours spent on Plaintiffs' two-year appeal was reasonable. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker.").

(vi)    *Appellate Fees*

Because this Court determined that a fee award is appropriate for a portion of the litigation in district court, Plaintiffs are entitled to a reasonable attorney fee on appeal. *See McElwaine.*, 176 F.3d at 1174. As the ERISA Law Group does not request fees for the appeal, (Dkt. 351-4, pp. 5), only the Huntley Law Firm will have its appellate fees reduced by 20%.

C.    **Conclusion**

In sum, the application for attorney's fees is reasonable. For the reasons previously discussed, the total hours will be reduced as follows: Huntley's total requested hours (342.9) will be reduced to 267.3; the Mandell's total (567.4) by 84.3; and John Hughes' total (216.5) by 29.4. Furthermore, the ERISA Law Group will not receive an award for work performed by Ms. Simmons. After multiplying the number of hours reasonably expended by Huntley, Mandell, and Mr. Hughes by their reasonable hourly rates, the Court reduces their totals by 20% for block-billing. Based on the foregoing, the Court finds that Defendants must pay Plaintiffs a total of $405,479.20 in fees.[6]

## ORDER

**IT IS ORDERED:**

1.      Plaintiffs' Renewed Motion for Award of Attorney Fees (Dkt. 351) is

   **GRANTED**. Defendants must pay Plaintiffs a total of $405,479.20 in fees.

2.      Plaintiffs' Motion for Leave to File Supplemental Briefing (Dkt. 356) is

   **DEEMED MOOT**.

DATED: November 29, 2018

B. Lynn Winmill
Chief U.S. District Court Judge

---

[6] (Messerly Law: $109,668) (Huntley Law Firm: $96,120) (ERISA Law Group: $199,691.20).